UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THOMAS GESUALDI, ANTHONY D'AQUILA,
LOUIS BISIGNANO, ANTHONY PIROZZI,
DOMINICK MARROCCO, JOSEPH FERRARA,
FRANK FINKEL, MARC HERBST, DENISE
RICHARDSON, and THOMAS CORBETT, as
Trustees and Fiduciaries of the Local 282 Welfare,     **MEMORANDUM & ORDER**
Pension, Annuity, Job Training and Vacation and     **11 CV 4080 (DRH)(AKT)**
Sick Leave Trust Funds,

                           Plaintiffs,

    -against-

BAYWOOD CONCRETE CORP.,

                         Defendant.
----------------------------------------------------------------X

**APPEARANCES:**

**Trivella & Forte, LLP**
Attorneys for Plaintiffs
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
 By: Julie A. Ortiz, Esq.

**The Ziskin Law Firm, LLP**
Attorneys for Defendant
6268 Jericho Turnpike, Suite 12A
Commack, New York 11725
 By: Richard B. Ziskin, Esq.

**HURLEY, Senior District Judge:**

       Plaintiffs Thomas Gesualdi, Anthony D'Aquila, Louis Bisignano, Anthony Pirozzi,

Dominick Marrocco, Joseph Ferrara, Frank Finkel, Marc Herbst, Denise Richardson, and

Thomas Corbett (collectively, "Plaintiffs"), as Trustees and Fiduciaries of the Local 282

Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds,

(collectively, the "Funds") brought this action against defendant Baywood Concrete Corp.

("Baywood" or "Defendant"), pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, for Baywood's alleged failure to submit to an audit of its books and records, and to make required fringe benefit contributions to Plaintiffs' Taft-Hartley Trust Funds.

Presently before the Court is Plaintiffs' motion to amend the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 15 to name Bohemia Concrete Corp. ("Bohemia") as a defendant, and to add an alter ego and/or single employer cause of action against Bohemia. For the reasons set forth below, Plaintiffs' motion is granted.

## *BACKGROUND*

Plaintiffs, as fiduciaries and Trustees of the Funds, have control and discretion over the administration and assets of the Funds. (Compl. ¶ 3.) Each of the Funds is a "multiemployer plan[]" and "employee benefit plan[]." (*Id.* ¶ 4.) Various collective bargaining agreements between several employers (the "Employers"), including Baywood, and Local 282, International Brotherhood of Teamsters ("Local 282" or the "Union"), required the Employers to contribute to the Funds on behalf of workers who were covered by the terms of the collective bargaining agreements. (*Id.* ¶ 5.)

Baywood is "engaged in the trucking business" in New York. (*Id.* ¶ 8.) Its president is Joseph Cunha. (*Id.* ¶ 9.) Baywood and Building Material Teamsters Local 282 were parties to a Building Material Contractors Agreement for the period of July 1, 2005 through June 30, 2008 (the "2005 CBA"). (*Id.* ¶ 10.) In addition, through the course of its conduct, Baywood evidenced an intent to be bound to a Building Material Contractors Agreement for the period of July 1, 2008 through June 30, 2011 (the "2008 CBA"). (*Id.*) The 2005 CBA and 2008 CBA (collectively, the "CBAs") bound the Employers that were parties thereto to a Restated

Agreement and Declaration of Trust ("Trust Agreement"), which required the Employers to submit remittance reports with each payment to the Funds. (Compl. ¶¶ 6, 12-13.) The reports consisted of the Employers' self-reported statements, which identified the Employers' covered workers, "the number of hours worked by [the] covered workers, and the Employer[s'] contribution obligation[s] to the Funds." (*Id*. ¶ 13.) The Trust Agreement further required the Employers to submit to periodic audits of their books and records for verification that all of the contributions required by the CBAs had been paid to the Funds. (*Id*. ¶¶ 14, 17.)

In the Complaint, Plaintiffs requested that the Court order Baywood to submit to an audit "by providing the Funds with all pertinent books and records for the period December 28, 2009 through the date of the audit." (Comp. Prayer for Relief at 9.) Additionally, the Plaintiffs sought, *inter alia*, recovery of "any delinquencies identified by the audit," interest on the delinquent contributions, attorneys' fees, and costs. (*Id*.)

According to Plaintiffs, in December 2011, they sought a default judgment against Baywood for its failure to answer the Complaint or otherwise appear in the matter. (Decl. of Julie A. Ortiz, dated February 12, 2013 ("Ortiz Decl.") at ¶ 10.) However, during the pendency of Plaintiff's motion for a default judgment, Baywood retained counsel and made arrangements to submit to an audit. (*Id*.) Plaintiffs assert that, in January 2012, Baywood presented Plaintiff's auditors with certain limited records. (*Id*. at ¶ 11.) During the review of those records, the "auditors discovered a possible connection with Bohemia," namely, "that . . . Baywood and Bohemia shared common office space," and there was a prior "money transfer between Baywood and Bohemia." (*Id*.) In order to further explore the connection, Plaintiffs served a judicial subpoena *duces tecum* upon Bohemia in March 2012. (*Id*.) Bohemia ultimately complied with

the subpoena and submitted a portion of its books and records to Plaintiffs' auditors in June 2012. (*Id.* at ¶ 12.)

On June 29, 2012, Magistrate Judge Tomlinson held an evidentiary hearing. (Ortiz Decl. at ¶ 13.) During the proceeding, Baywood's principal, Joseph Cunha, appeared and testified about both Bohemia's and Baywood's business operations. (*Id.*) Subsequent to the hearing, Bohemia provided additional records to Plaintiffs' auditors, and, on October 22, 2012, the audits of Bohemia and Baywood were completed. (*Id.* at ¶ 14.) The audit of Bohemia identified that $38,092.84 in fringe benefit contributions were owed to the Funds. (*Id.*) Furthermore, the audit revealed a "strong connection" between Bohemia and Baywood in that: "there were significant money transfers between both entities," "Bohemia issued a W-2 wage and earnings statement to Baywood's principal, Joseph Cunha," and "both Bohemia and Baywood had at least one common employee." (*Id.* ¶ 15.)

## *DISCUSSION*

### I. *Legal Standard*

Under Rule 15(a)(2), "leave to amend 'shall be freely given [by the court] when justice so requires.' " *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed.R.Civ.P. 15(a)(2)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* Indeed, "amendments are generally favored because they tend to facilitate a proper decision on the merits." *Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 376 (E.D.N.Y. 2009) (citation and internal quotation marks omitted). Therefore, leave to amend is to be freely given, in the District Court's discretion, absent an "apparent or declared reason[,] such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman*, 371 U.S. at 182; *see also Am. Med. Ass'n v. United Healthcare Corp.*, 2006 WL 3833440, at *3 (S.D.N.Y. Dec. 29, 2006) ("Under Rule 15(a), leave to amend a pleading shall be given freely when justice so requires . . . unless (1) the party seeking to amend has unduly delayed; (2) the party seeking to amend is acting with a dilatory motive; (3) the proposed amendment would cause undue prejudice to the opposing party; or (4) the proposed amendment would be futile." (citation and internal quotation marks omitted)).

Moreover, because Plaintiffs seek to add Bohemia as a defendant in this action, "[Rule] 21 is implicated in addition to [Rule] 15." *Sullivan v. Cnty. of Suffolk*, 2006 WL 2844205, at *6 (E.D.N.Y. June 1, 2006). Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." The "same standard of liberality afforded to motions to amend pleadings under Rule 15" applies to motions to add new parties under Rule 21. *Fair Housing Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972); *accord FTD Corp. v. Banker's Trust Co.*, 954 F. Supp. 106, 109 (S.D.N.Y. 1997).

Here, there is no assertion by Baywood that Plaintiffs have acted in bad faith or with a dilatory motive, or that Plaintiffs have unduly delayed. Nor have Plaintiffs previously filed any amendments to the Complaint. In addition, Baywood does not argue that the proposed amendment would cause undue prejudice. Therefore, it need be determined only whether Plaintiff's proposed amendment is futile.

**II.** *Futility of Amendment*

Although leave to amend is to be "freely given when justice so requires," it is not an abuse of discretion to deny leave to amend "[w]here it appears that granting leave to amend is

unlikely to be productive," such as when a proposed amendment is futile. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citations and internal quotation marks omitted). "[T]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss." *Crippen v. Town of Hempstead*, 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may consider "the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken." *Duncan v. Universal Music Grp. Inc.*, 2012 WL 1965398, at *2 (E.D.N.Y. May 31, 2012). In addition, "[a] motion to amend the complaint may be considered futile if the claims sought to be added are barred by the relevant statute of limitations." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 397 (E.D.N.Y. 1998).

In this case, Baywood asserts that Plaintiffs' motion to amend should be denied because the claims Plaintiffs seek to assert against Bohemia are futile. Specifically, Baywood argues that, even though the audit of Bohemia's books and records identified that contributions were due to the Funds "for non-union outside trucks hired by Bohemia," neither Bohemia nor Baywood is responsible for paying those contributions because: (i) "neither [it] nor Bohemia actually signed any collective bargaining agreement"; and (ii) "the allegedly applicable Local 282 Building Material Contractors Industry Contract does not contain a 'subcontracting' clause which require[s] a signatory employer to assume responsibility for any subcontractor's non-compliance with the collective bargaining agreement." (Def.'s Mem. in Opp'n at 3.) However,

as discussed below, Baywood's arguments are unpersuasive.[1]

Section 302(c)(5)(B) of ERISA requires that payments to an ERISA trust fund be made pursuant to a "written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). An employer need not actually sign a collective bargaining agreement to satisfy the requirements of this section. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir. 1999) ("[A]n unsigned, written agreement satisfies Section 302(c)(5)(B)'s 'written agreement' requirement."). Thus, although it is undisputed that Baywood never signed the 2008 CBA, it may still be bound to the terms of that agreement.[2] "The only question is whether [Baywood's] conduct manifested an intent to adopt, or agree to, the unsigned [2008 CBA]." *Id.*; *see also Bricklayers Local 21 of Ill. Apprenticeship and Training Program v. Banner Restoration, Inc.,* 385 F.3d 761, 766 (7th Cir. 2004) ("We begin with the well-established principle that a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound, ... rather [a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." (alteration in original) (citation and internal quotation marks omitted)).

In *Brown,* the employer had signed one collective bargaining agreement, but did not sign two subsequent collective bargaining agreements. 194 F.3d at 353. During the six-year time

---

[1] Baywood argues that although the audit of Bohemia's books and records revealed that contributions were due and owing for an employee named Richard Regino, there are no allegations by Plaintiffs that Regino was a covered employee, or that contributions were due and owing on Regino's behalf. (Def.'s Mem. in Opp'n at 3.) Defendant asserts this argument to demonstrate the futility of the Proposed Amended Complaint's claims against Bohemia. However, because the Court finds that Plaintiffs' claims against Bohemia are not futile as Plaintiffs have sufficiently alleged that contributions are owed to the Funds for non-union outside trucks that were hired by Bohemia, it need not address Baywood's additional argument regarding Regino. Similarly, although Baywood argues that the audit of its books and records "reveals a credit of thirteen hundred dollars . . . due to Baywood," (*id.*), since the Court finds that Plaintiffs have sufficiently alleged a single employer/alter ego cause of action, Plaintiffs' claims against Baywood are not futile.

[2] Although Baywood asserts that neither it nor Bohemia signed any collective bargaining agreement, Plaintiffs have submitted a copy of the signed 2005 CBA upon their reply. (*See* Exh. K to Reply Decl. of Julie A. Ortiz, dated April 3, 2013 ("Ortiz Reply Decl.").) Since the Court applies a motion to dismiss standard when analyzing the futility of an amendment, the Court is permitted to consider documents that were "referenced in the complaint, . . . [or] relied on [by the plaintiff] in bringing suit and that [we]re either in the plaintiff's possession or that the plaintiff knew of when bringing suit." *Duncan*, 2012 WL 1965398, at *2. Such is the case here.

period covered by those subsequent collective bargaining agreements, however, the employer submitted monthly remittance reports signed by the employer's president, which contained a phrase indicating that they were submitted in accordance with the collective bargaining agreement. *Id.* The employer also paid wages and contributed to the funds on behalf of its union employees at the rates specified in the collective bargaining agreement and allowed an audit of its books as required by the collective bargaining agreement even though most of the audit concerned months during which the employer was not a signatory to the collective bargaining agreement. *Id.* Finally, the employer sent a letter to the trust funds acknowledging its responsibility to the funds. *Id.* The Second Circuit found this conduct "sufficient, absent contrary evidence, to establish as a matter of law [the employer's] intent to adopt the two unsigned [collective bargaining agreements]." *Id.* at 355.

Plaintiffs allege facts in the Proposed Amended Complaint that are similar to the facts in *Brown*. For example, Plaintiffs allege that Baywood was a party to the 2005 CBA, (Exh. J. to Ortiz Decl. at ¶ 16), and there is no suggestion that Baywood did not comply with the terms of that agreement. Further, as noted previously, Plaintiffs have submitted a copy of the signed 2005 CBA. (Exh. K to Ortiz Reply Decl.) Moreover, after the effective date of the 2005 CBA, Baywood continued to contribute to the Funds. Indeed, Defendant concedes: "Plaintiffs' auditors conducted an audit of Baywood for the period December 28, 2009 through December 31, 2011. This audit report reveals a credit of thirteen hundred dollars ($1,300.00) due to Baywood, of course, meaning that Baywood paid beyond its contribution requirement." (Def. Mem. in Opp'n at 3 (citation omitted).) Finally, it is alleged that Baywood permitted the Funds to audit its books and records, which, apparently, was in compliance with the 2008 CBA. (*See*

8

Exh. J. to Ortiz Decl. at ¶ 51.) Therefore, the Court finds that Baywood's alleged conduct is sufficient to manifest an intent by it to be bound by the 2008 CBA.

Moreover, the collective bargaining agreements may be enforced against Bohemia under either the single employer doctrine or the alter ego doctrine. Under the single employer doctrine, "a collective bargaining agreement may be enforced against the non-signatory employers if the employers constitute a 'single employer' and if the employees of the companies constitute a single appropriate bargaining unit." *Brown v. Sandimo Materials*, 250 F.3d 120, 128 n.2 (2d Cir. 2001). "Separate companies are considered a 'single employer' if they are part of a single integrated enterprise." *Lihli Fashions Corp. v. NLRB,* 80 F.3d 743, 747 (2d Cir. 1996) (citation and internal quotation marks omitted). The Supreme Court has identified the following four factors to determine whether separate companies constitute a "single employer": (1) "interrelation of operations," (2) "common management," (3) "centralized control of labor relations," and (4) "common ownership." *See Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.,* 380 U.S. 255, 256 (1965). The Second Circuit has identified two additional factors: "the use of common office facilities and equipment and family connections between or among the various enterprises." *Lihli Fashions Corp.,* 80 F.3d at 747. While all of these factors are taken into account, "[u]ltimately, single employer status depends on all the circumstances of the case and is characterized by absence of an arm's length relationship found among unintegrated companies." *Id.* (citation and internal quotation marks omitted).

"The alter ego doctrine, while having the same binding effect on a non-signatory as the single employer/single unit doctrine, is conceptually distinct." *Truck Drivers Local Union No. 807 v. Reg'l Import & Export Trucking Co.*, 944 F.2d 1037, 1046 (2d Cir. 1991). "[T]he focus of 'the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid

the obligations of a collective bargaining agreement through a sham transaction or technical change in operations.' " *Id.* (quoting *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.,* 690 F .2d 489, 508 (5th Cir. 1982)). Essentially, the alter ego doctrine can "provide[] an analytical hook to bind a non-signatory to a collective bargaining agreement." *Id*. More specifically, "[t]he purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.' " *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) (quoting *Newspaper Guild of N.Y., Local No. 3 of the Newspaper Guild, AFL-CIO v. NLRB,* 261 F.3d 291, 298 (2d Cir. 2001)). "The hallmarks of the alter ego doctrine include whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Trustees of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc.*, 2013 WL 5637492, at *5 (E.D.N.Y. Oct. 15, 2013) (quoting *Reg'l Import & Export Trucking, Co.*, 944 F.2d at 1046) (internal quotation marks omitted).

Here, Plaintiffs allege that Bohemia is bound by the CBAs, and, consequently, is jointly and severally liable for delinquent employer contributions to the Funds, either because Bohemia is an alter ego of Baywood or because Baywood and Bohemia constitute a single employer. (Exh. J. to Ortiz Decl. at ¶¶ 63, 65.) The Proposed Amended Complaint contains the following allegations that shadow the factors considered when applying the single employer and alter ego doctrines: (i) "[u]pon information and belief, . . . [the] drivers employed by Bohemia are the same drivers employed by Baywood" (*id.* ¶ 25); (ii) "[u]pon information and belief, . . . Baywood and Bohemia share common office space" (*id*. at ¶ 26); (iii) "[u]pon information and belief, . . . Baywood and Bohemia share common management" (*id*. at ¶ 27); (iv) "[u]pon

10

information and belief, . . . Baywood and Bohemia are engaged in a common enterprise" (*id*. at ¶ 30); (v) "[u]pon information and belief, . . . Baywood and Bohemia have used the same workers to perform work covered by the CBA" (*id*. at ¶ 35); (vi) "[u]pon information and belief, . . . Baywood used Bohemia to avoid its obligations under the CBAs, including its obligation to make contributions to the Funds for work performed by covered employees" (*Id*. at ¶ 44).

Baywood also argues that the 2008 CBA "does not contain a 'subcontracting' clause which [would] require a signatory employer to assume responsibility for any subcontractor's non-compliance with the collective bargaining agreement." (Def.'s Mem. in Opp'n at 3). Thus, Defendant impliedly argues that Bohemia was a subcontractor that Baywood hired to perform trucking work. However, this argument does not conclusively demonstrate that Plaintiffs' proposed amendment is futile considering that the 2008 CBA, upon which Defendant relies for this argument, also provides, in Section 26, entitled "EMPLOYERS HIRING TRUCKS," that: "The Employer will not participate in any fashion, scheme, device or plan (either directly or indirectly through relatives, business associates or Employees) to defeat the terms and intent of this Agreement." (Exh. B. to Ortiz Decl.) Plaintiffs' alter ego/single employer cause of action implies a breach of this provision.

In sum, Plaintiffs sufficiently allege that Bohemia is either the alter ego of Baywood, or that Bohemia and Baywood constitute a single employer. *See Cont'l Floors, Inc.*, 2013 WL 5637492 at *6 (finding that plaintiffs sufficiently pleaded an alter ego/single employer claim where they alleged that the entities operated as a single enterprise in the same location and shared employees, insurance and management); *Trustees of Hollow Metal Trust Fund v. FHA Firedoor Corp.*, 2013 WL 1809673 (S.D.N.Y. April 30, 2013) (denying motion to dismiss where plaintiffs "summarily pleaded each of" the factors of the alter ego test); *Operating Eng'rs Local*

*101 Pension Fund v. Al Muehlberger Concrete Constr., Inc.*, 2013 WL 5409116, at *6 (D. Kan. Sept. 26, 2013) (denying motion to dismiss where plaintiffs summarily pleaded, "upon information and belief," factors relevant to alter ego determination). Accordingly, the Court does not find Plaintiffs' proposed amendment to be futile.

### *CONCLUSION*

For the reasons set forth above, Plaintiffs' motion to amend the complaint is granted.

**SO ORDERED.**

Dated: Central Islip, New York
September 17, 2014

/s/
Denis R. Hurley
United States Senior District Judge